Littleton, Judge,
delivered the opinion of the court:
The facts show that in August 1934 plaintiff made a contract with the United States through the Department of •Commerce to furnish the Government a quantity of N. R. A. posters reproduced by the photolithographic process for which the Government agreed to pay plaintiff $7,109.15. The required number of posters was made and delivered by plaintiff and was received and accepted by the Government through the Department of Commerce for the National Recovery Administration, and plaintiff was duly paid there *462 for on October 27, 1934, out of the appropriation for “National Industrial Recovery, National Recovery Administration 1933 April 1, 1936.” Thereafter, in May 1935, plaintiff entered into two contracts with the Commissioner of Patents to furnish during the fiscal year ending June 30, 1936, certain copies reproduced by the photolithographic process of current drawings for designs and certain copies of each page of exhausted patents, designs, and other papers. This work was performed by plaintiff during July and August 1935 and the total contract price therefor was $8,071.40. The articles called for by these contracts were made and delivered to and accepted by the Commissioner of Patents. On January 16, 1936, the Comptroller General withheld $7,109.15 due plaintiff under the Patent - Office contracts and applied the same to an alleged illegal payment in that amount to plaintiff under the N. R. A. contract of August 1934 and paid plaintiff the balance of $962.25 due it under the Patent Office contracts.
The defendant has interposed a counterclaim for the amount withheld and deducted by the Comptroller General from the amount due plaintiff under the contracts of May 1935 with the Commissioner of Patents.
The basis of the counterclaim is that the amount of $7,109.15 paid to plaintiff under and pursuant to the contract of August 1934 for making and delivering 1,000,000 N. R. A. posters was an erroneous and illegal payment for the reason that no authority existed under section 11 of the act of March 1, 1919, 40 Stat. 1270, and the regulations of the Joint Committee on Printing for any printing to be done in the District of Columbia other than by the Government Printing Office unless contracted for by the Public Printer in accordance with the act of February 28, 1929, 45 Stat. 1400.
Section 11 of the act of March 1, 1919, so far as material here, provided that “on and after July 1, 1919, all printing, binding, and blank-book work for Congress, the Executive Office, the judiciary, and every executive department, independent office, and establishment of the Government, shall be done at the Government Printing Office, except such *463 classes of work as shall be deemed by the Joint Committee on Printing to be urgent or necessary to have done elsewhere than in the District of Columbia for the exclusive use of any field service outside of said District.”
The act of February 28, 1929, supra, provided, so far as-material here, “that hereafter such printing, binding, and blank-book work authorized by law, as the Public Printer is not able or equipped to do at the Government Printing Office, may be produced elsewhere under contracts made by him with the approval of the Joint Committee on Printing.”
We are of opinion that plaintiff is entitled to recover the amount withheld by the Comptroller General for the reason that the contract of August 1984 under which the posters were made and furnished was legal and proper under' section 2 (a) and (b) of the National Industrial Eecovery Act, 48 Stat. 195, and the provisions of the Fourth Deficiency Act for the fiscal year 1933, approved June 16,1933, 48 Stat. 275, appropriating $3,300,000,000 for carrying into effect the provisions of the National Industrial Eecovery Act.
Under Title 1, Section 1 of the National Industrial Ee-covery Act, Congress declared a national emergency to exist. It further declared a policy to diminish obstructions to the free flow of interstate commerce, to provide for the general welfare by promoting the organization of industry for cooperative action among trade groups, and otherwise to rehabilitate industry. Section 2 provided as follows:
(a) To effectuate the policy of this title, the President is hereby authorized to establish such agencies, to accept and utilize such voluntary and uncompensated services, to appoint, without regard to the provisions of the civil service laws, such officers and employees, and to utilize such Federal officers and employees, and, with the consent of the State, such State and local officers and employees, as he may find necessary, to prescribe their authorities, duties, responsibilities, and tenure, and, without regard to the Classification Act of 1923, as amended, to fix the compensation of any officers and employees so appointed.
(b) The President may delegate any of his functions and powers under this title to such officers, agents, and *464 employees as be may designate or appoint, and may establish an industrial planning and research agency to aid in carrying out his functions under this title.”
Section 220 authorized an appropriation for the purposes of carrying into effect the provisions of the act, and under the Fourth Deficiency Act for the fiscal year 1933, approved June 16, 1933, supra, the following appropriation, among others, was made:
For the purpose of carrying into effect the provisions of the Act entitled “An Act to encourage naMoncd inr dustrial recovery, to foster fair competition, and to provide for the construction of certain useful public works, and for other purposes,” approved June 16, 1933, and also for the purpose of carrying into effect the provisions of the Act entitled “An Act for the relief of unemployment through the performance of useful public work, and for other purposes,” approved March 31, 1933, and for each and emery object thereof, to be expended in the discretion and under the direction of the President, to be immediately available, and except as hereinafter provided to remain available until June 30, 1935, $3,300,000,000 * * *. [Italics supplied.]
The contract of August 1934 with the Department of Commerce for 1,000,000 N. R. A. posters which plaintiff made and supplied, and for which it was paid, was clearly authorized to be made in the discretion and under the direction of the President notwithstanding the provisions of the act of March 1, 1919, and the act of February 28,1929. The ■contract for the N. R. A. posters was made by the Department of Commerce pursuant to authority duly delegated by the President under the discretion vested in him by the National Industrial Recovery Act and the provisions of the appropriation act under which the payment in question was made.
In these circumstances and under the decision of this court in American Lithographic Co. v. United States, 57 C. Cls. 340, 356, plaintiff is entitled to recover. In the American Lithographic case the Treasury Department entered into a contract for 500,000 lithographic posters. The plaintiff *465 brought suit in this court for the work performed under the contract and the defendant interposed a defense, among, others, that the contract was illegal under section 3786-B. S., the provisions of which were similar to the act of March 1, 1919, relied upon in the case at bar. This court, said:
Another obstacle, quite anomalous, is interposed to-forestall recovery under the express contract, a defense which, if meritorious, would necessarily involve the officers of the defendant in violation of express' statutory law. A counterclaim is pleaded. Its worthiness is alleged to depend upon the express mandate contained in section 3786 Bevised Statutes, which, in terms, provides as follows:
“All printing, binding, and blank books for the Senate and House of Bepresentatives and for the executive and judicial departments shall be done at the Government Printing Office, except in cases otherwise provided by law.”
We think we need only quote section 8 of the act of April 24, 1917, first Liberty Loan act, 40 Stat. 35, 37, to dispose of the contention. It is as follows:
“That in order to pay all necessary expenses, including rent, connected with any operation under this act, a sum not exceeding one-tenth of one per centum of the amount of bonds and one-tenth of one percentum of the amount of certificates of indebtedness herein authorized is hereby appropriated, or as much thereof as may be necessary, out of any money in the Treasury not otherwise appropriated, to be expended as the Secretary of the Treasury may direct.”
The scope, purpose, and intent of the Liberty loan act authorized what was done in this case.
Judgment will be entered in favor of plaintiff for $7,109.15. It is so ordered.
Williams, Judge; GeeeN, Judge; and Whalet, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.